PARIENTE, J.,
specially concurring.
I agree with the majority decision to affirm McGirth’s convictions and sentence. I write, however, to express my view that (a) evidence that McGirth pulled a knife on Sheila Miller’s fiancé two years before the crime was inadmissible; and (b) the State’s penalty-phase closing argument that analogized the role of McGirth to the pilots of the two planes that crashed into the World Trade Center was improper.
As to the knife incident, this evidence of a prior bad act was elicited by McGirth’s co-defendant during the cross-examination of the victim, Sheila Miller, the daughter of the murder victim Diana Miller, allegedly to show her bias as a witness. I agree that evidence of Sheila and McGirth’s prior drug-based relationship was relevant to explain McGirth’s association with Sheila and whether Sheila was potentially involved in the crime. I disagree, however, that evidence that McGirth pulled a knife on Sheila’s fiancé at some time before the crime was admissible because it is not relevant to or inextricably intertwined with the crime in question and any marginal relevance about the nature of the past relationship and falling out would be outweighed by potential prejudice to McGirth. However, in this case, since the testimony about pulling a knife was elicited only on cross-examination by the co-defendant, the reference was extremely brief, and the State did not highlight this evidence, the error in admitting this evidence was harmless beyond a reasonable doubt as there is no reasonable possibility this brief reference affected the jury’s verdict in this case.
My next concern is with the State’s initial penalty-phase argument that lessening McGirth’s culpability in this case because of any potential involvement of Sheila in the planning of the crime would be “like giving the pilots of the two planes that crashed into the World Trade Center a pass ... a pass because it was Osama’s idea.” The trial court overruled a timely objection. This argument is clearly impermissible.
First, the argument did not address any aggravator. To the extent the State alleged that it was responding to the defendant’s potential argument that Sheila was also involved in this crime as a mitigator, that specific argument had not been advanced by the defendant. In fact, the prosecutor recognized this when he mentioned that he would talk about Sheila “because I expect that you may hear that name come up in a few moments. Her name is not on the list of mitigating circumstances, and you heard no evidence about her during the course of the second portion of the trial.”
*798 Second, even if discussing the role of Sheila’s involvement was appropriate, arguments made referencing the 9-11 terrorists and Osama were completely inappropriate. Rather, the argument was both “highly emotional” and “highly volatile” as defense counsel properly stated at the time of his objection. Prosecutors must confine their arguments to inferences based on record evidence; they are prohibited from exceeding the bounds of permissible advocacy by discussing other notorious cases that could evoke emotional responses. Here, the argument was not based on inferences from the record and expressly referenced the most brutal attack ever committed in this country. Our country’s reaction, of course, was one of nationwide horror and collective outrage.
Although I ultimately agree with the majority that this isolated reference in this case was harmless beyond a reasonable doubt, I once again issue a word of caution regarding closing arguments in death penalty cases:
This type of argument simply should have no place in a prosecutor’s closing arguments — especially in a capital case. Death penalty cases, by the very nature of the crimes involved, have the potential to arouse emotions and passions. As officers of the court, prosecutors must ensure, to the extent possible, a dispassionate and objective jury deliberation process.
Wade v. State, 41 So.3d 857, 880 (Fla.2010) (Pariente, J., specially concurring).
QUINCE, J., concurs.